Otis Lee **WESBY**, Appellant,

v.

**STATE** of Indiana, Appellee.

No. 18S00–8802–CR–268.

Supreme Court of Indiana.

March 16, 1989.

Jack Quirk, Muncie, for appellant.

Linley E. Pearson, Atty. Gen., Mary Dreyer, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of Felony Murder, for which he received a sentence of fifty (50) years.

The facts are: In early February of 1987, appellant's friend, Vincent Layne, asked him to procure a handgun. On February 9, 1987, appellant went to the Muncie, Indiana home of 73-year-old Bessie Allen, his father's former girlfriend, who had known appellant since early childhood. Believing Mrs. Allen kept a pistol concealed in her bedroom, appellant pried the screen door open, entered the house, and proceeded to find a .22 caliber revolver in a bedroom drawer.

Before appellant managed to leave the house, Mrs. Allen returned home carrying bags of groceries. When she discovered appellant inside the house, she asked him if he had pried open her door. He responded in the negative. She put down the groceries and started to reach for a baseball bat in the corner of the room. Appellant then shot her in the head with the revolver. Mrs. Allen appeared still to be reaching for the bat, so appellant shot her in the head a second time and pushed her over onto the floor. Appellant then left the house and two or three days later delivered the pistol to Layne, telling him to "be cool, because I shot this lady with it." The victim, who had been "breathing pretty hard before [appellant] left" her house, was found dead by a friend two days later. An autopsy revealed she had bled to death from two gunshot wounds to the head.

Appellant contends the trial court erred in denying his motion to suppress and in admitting into evidence his statements made to police and his videotaped confession. Appellant claims his statement confessing to the murder was coerced by physical abuse and by threats regarding the death penalty. He testified at the suppression hearing that a police officer kicked him repeatedly in the shins and told him he would be free to go if he confessed he killed the victim in self-defense. At the trial, appellant's girlfriend's mother testified he lived in her home, and she had observed knots on his lower legs following his first visit to the police.

The voluntariness and admissibility of a confession depend upon questions of fact which are to be resolved by the trial court. *Bevill v. State* (1985), Ind., 472 N.E. 2d 1247. On appeal, the trial court's finding of voluntariness will not be disturbed as long as there exists substantial evidence to support the ruling. *Jones v. State* (1984), Ind., 464 N.E.2d 1283.

In the case at bar, the police explained to appellant his rights from a *Miranda* waiver form. Appellant signed the form to acknowledge he understood his rights but refused to sign the waiver provision. He then began to ask the officers questions, and when he learned the death penalty was within the realm of possible sentences, he decided to sign the waiver form and give a statement. When questioning is reinitiated by a defendant who has previously invoked his right to remain silent, a resulting confession is admissible. *Moore v. State* (1986), Ind., 498 N.E.2d 1.

Moreover, all the officers involved in appellant's interrogation testified he was not threatened with the death penalty nor promised any lessened punishment. They all testified in addition that appellant was not physically assaulted nor coerced in any way. The trial court thus had ample evidence to support his ruling that appellant's confession was made voluntarily. The admission of appellant's statements to police was not error.

Appellant contends the trial court erred in overruling his objection to a question posed to Muncie Police Lieutenant Norman Irelan. He was asked, regarding his investigation at the victim's home, if

between his first and second visits he saw evidence that someone had been there. The witness replied, "No."

Appellant argues the question was cumulative and called for speculation as well as characterization of the evidence already elicited by the prosecutor. The admission, however, of cumulative evidence is within the sound discretion of the trial court, whose ruling will not be disturbed on appeal absent a showing of abuse of discretion. *Hunter v. State* (1986), Ind., 492 N.E.2d 1067. Thus an appellant, to obtain reversal, must affirmatively demonstrate how the erroneously admitted testimony was prejudicial to his substantial rights. *Wagner v. State* (1985), Ind., 474 N.E.2d 476.

In the case at bar, appellant fails to show how he was harmed by Lieutenant Irelan's indication that the victim's house did not appear to have been disturbed between his first and second visits. We accordingly find no ground for reversal in its admission.

■ Appellant contends the trial court erred in admitting over his objection State's Exhibits U, V, W, EE, and GG. Exhibits U, V, and W are photographs of the victim taken at the crime scene; Exhibits EE and GG are photographs taken of the victim during the autopsy conducted to determine her cause of death. Appellant maintains the probative value of the photographs is outweighed by their "grossness" and inflammatory nature and that he was prejudiced thereby.

The admission of the photographs is within the discretion of the trial court, whose ruling we will not disturb except for abuse of that discretion. *Fozzard v. State* (1988), Ind., 518 N.E.2d 789. That photographs depict gory, revolting, or inflammatory details of the crime is not sufficient basis for reversal, unless they are without relevance to any material issue. Photographs are generally admissible as long as they depict the subject of testimony which would be admissible if related orally by a witness. *Id.*

Of the photographs at issue here, the first three depict the victim as she ap-

peared when she was discovered and examined by police at the murder scene. The other two demonstrate the trauma inflicted to the victim's head by the bullets' passage and illustrate the pathologist's testimony as to the cause of death. Thus, although gruesome, their admission was not error.

■ Appellant contends the trial court erred in admitting over his objection State's Exhibits HH, II–1, and II–2. Exhibit HH consists of several rounds of .22 caliber ammunition, while II–1 and II–2 consist of a .22 caliber revolver and the white sock in which it was concealed, respectively. Appellant argues that no proper foundation was laid for their admission because they were not connected to him and to the crime.

In the instant case, Delaware County Coroner Jack Stonebraker, who also worked as an investigator for the prosecutor's office, testified he obtained the pistol hidden within the sock and the ammunition from Reggie Bragg, who had bought it for $20 from Vincent Layne, who in turn had obtained it from appellant two or three days after the murder. Prior to Stonebraker's testimony, Layne and Bragg both testified as to their respective dealings with the pistol, and each identified the exhibit as being the pistol initially obtained from appellant.

The chain of possession of the pistol, sock, and ammunition was established from their receipt from appellant to their custody in the hands of the authorities. The contention they were improperly admitted is without merit.

■ Appellant contends the trial court erred in allowing over his objection the rebuttal testimony of Muncie Police Captain Paul Cox. During the presentation of his defense, appellant testified he signed a waiver of rights form only after being coerced by police. At the conclusion of evidence for the defense, the State called Captain Cox to testify in rebuttal. He stated he had been present when State's Exhibit TT, the rights waiver form, was filled out and signed by appellant. Exhibit TT was then admitted into evidence.

Appellant argues this subject was outside the scope of proper rebuttal in that it should have been raised during the State's case-in-chief and moreover did not in fact contradict appellant's own testimony. He also maintains the State has adopted a practice of using spurious rebuttal testimony as a means of always having the last word.

However, the scope of rebuttal testimony is within the discretion of the trial court. Ind.Code § 35–37–2–2(3); *Norton v. State* (1980), 273 Ind. 635, 408 N.E.2d 514. Even if the trial court permits rebuttal testimony regarding matters not in rebuttal, such irregularity will not be treated as reversible error unless the defendant was prevented from presenting similar rebuttal evidence. *Darby v. State* (1987), Ind., 514 N.E.2d 1049. Thus any error in the admission of improper rebuttal testimony is rendered harmless where the defendant is given but declines the opportunity to present surrebuttal. *Seltzer v. State* (1986), Ind., 489 N.E.2d 939.

In the instant case, while overruling appellant's objection to the State's rebuttal the trial court ruled that appellant would have the opportunity to present surrebuttal should he desire. At the close of the State's rebuttal, the defense responded in the negative to the court's query as to any surrebuttal evidence. Any error in the admission of the State's rebuttal testimony thus is deemed harmless.

 Appellant contends the evidence is insufficient to sustain the jury's verdict. He also claims the verdict is contrary to law because it rests in part upon his allegedly inadmissible confession. In addition, he notes the lack of expert evidence to prove the pistol offered at trial was in fact the one used to fire the bullets which killed Bessie Allen. He concludes his connection to the crime rests upon the testimony of those witnesses who testified as to the pistol's chain of possession in exchange for dismissal of charges against them.

Whenever the sufficiency of evidence is challenged on review, we will neither reweigh the evidence nor judge the credibility of the witnesses. *Hill v. State* (1988), Ind., 517 N.E.2d 784.

We have held appellant's confession to be admissible. This when verified by other evidence such as a front gun barrel sight, found on the floor in the same room as the victim's body and which fit perfectly onto the barrel of the handgun, and the tracing of that gun to appellant amply supports the jury's verdict.

 Appellant contends the trial court erred in imposing an aggravated sentence of fifty (50) years. He maintains the court considered improper aggravating circumstances to render a sentence that is not in proportion to the nature of the offense and is manifestly unreasonable. Appellant recites as mitigation his difficult childhood, his young age of eighteen (18) years, his low intelligence, the fact the murder was not premeditated, and that Bessie Allen tried to hit her assailant with a baseball bat, thus he was defending himself.

On review, we will not revise a sentence meted out by a trial court so long as it is authorized by statute and any aggravating circumstances are stated on the record, unless it is manifestly unreasonable. Ind.R. App.Rev.Sen. 2; *Thomas v. State* (1987), Ind., 510 N.E.2d 651. In deciding whether to increase or decrease the presumptive sentence, the trial court may consider any factors relevant to the offense and the offender, in addition to those specified in the statute. Ind.Code § 35–38–1–7; *Thurston v. State* (1985), Ind., 472 N.E.2d 198.

In the case at bar, the trial court stated his reasons for increasing the sentence from the presumptive forty (40) years to fifty (50) years. He noted that appellant had been offered several prior opportunities for rehabilitation—the Children's Home, the Detention Center, the Gibault School, and formal probation programs—and had been released from the Boy's School only nineteen days before the instant offense. He concluded appellant was in need of correctional treatment best offered by a penal facility.

The trial court also found the circumstances of the crime to constitute aggravat-

ing factors. He cited the advanced age of the victim, the position of trust appellant had occupied regarding the victim, and the fact appellant had confronted the victim instead of retreating. He also noted appellant's lack of remorse and the likelihood of his perpetration of similar offenses in the future. The trial court then concluded that any reduced sentence would depreciate the seriousness of the crime.

The trial court's assessment that the aggravating circumstances far outweighed the mitigating circumstances and his decision to sentence appellant to fifty (50) years were not manifestly unreasonable.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER and PIVARNIK, JJ., concur.

DICKSON, J., concurs in result.